UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BECKY NGUYEN,

          Plaintiff,

    v.

LOCKHEED MARTIN
CORPORATION,

          Defendant.

Case No. 16-cv-03780-NC

**ORDER GRANTING DEFENDANT
LOCKHEED MARTIN
CORPORATION'S MOTION FOR
SUMMARY JUDGMENT**

Re: Dkt. No. 45

In this Fair Employment and Housing Act (FEHA) case, plaintiff Becky Nguyen asserts that defendant Lockheed Martin Corporation illegally terminated her due to stroke-related disability and her old age. Lockheed Martin asserts it terminated Nguyen for the legitimate, nondiscriminatory reason that it no longer needed a full-time employee to do the work Nguyen had been doing. Lockheed Martin now moves for summary judgment. Under FEHA's burden-shifting framework, Lockheed Martin's motion comes down to one issue: whether Nguyen offers sufficient evidence that Lockheed Martin's proffered reasons for Nguyen's termination are mere pretext for illegal discrimination.

Nguyen's evidence of pretext include the hiring of a younger, non-disabled employee for a position similar to Nguyen's; statements by Lockheed Martin employees about "fresh" or "junior" persons; examples of other old and disabled employees being terminated; allegedly altered performance reviews from before Nguyen's termination; and evidence about Lockheed Martin's budget constraints. Because this evidence does not

1 give rise to a reasonable inference of pretext or discriminatory motive, Lockheed Martin's

2 motion for summary judgment is GRANTED.

3 **I.    BACKGROUND**

4    **a.   Undisputed Facts**

5       Nguyen began working for Lockheed Martin in 1985.  Dkt. No. 56 at 7.  Nguyen

6 suffered from a stroke in July 2012 and took seven months of disability leave, returning to

7 work in February 2013.  Dkt. No. 56 at 6.  When she returned, Nguyen experienced

8 lingering symptoms of the stroke, including depression, difficulty sleeping, headaches, and

9 dizziness.  Dkt. No. 57-1 at 68–72 (Nguyen Decl. Ex. 25).  There is no indication that

10 Nguyen's stroke symptoms hindered her job performance.  Nguyen was 56 years old when

11 Lockheed Martin terminated her employment on June 30, 2015.  Dkt. No. 56 at 12.

12       Prior to her termination, Nguyen worked as a "Level 4 Systems Engineer."  Dkt.

13 No. 45-2 at 2 (Burgess Decl. ¶ 7).  In this role, Nguyen supported Lockheed Martin's

14 Milstar and Advanced Extremely High Frequency (AEHF) satellite programs.  Dkt. No.

15 45-5 at 1–2 (Frakes Decl. ¶ 3).  Nguyen's primary responsibility was to provide flight

16 telemetry data from the Flight Engineering & Integration team to the AEHF Database

17 team, *Id.* at 2 (Frakes Decl. ¶ 3), which included maintenance and development of database

18 features that allowed the telemetry data to be delivered.  *See*, *e.g.*, Dkt. No. 57-1 at 90–97

19 (Nguyen Decl. Exs. 33, 34).

20       The funding for Nguyen's position came from different sources over time.  In 2014,

21 the AEHF project was funded through a contract between Lockheed Martin and the United

22 States government called the Interim Contractor Sustainment (ICS) contract.  Dkt. No. 45-

23 5 at 2 (Frakes Decl. ¶ 5).  A new contract was anticipated to take effect in late November

24 2014, called the Combined Orbital Operations Logistics Sustainment (COOLS) contract.

25 *Id.*  However, the start of the COOLS contract was delayed until 2015.  *Id.*  Consequently,

26 from December 2014, until the COOLS contract took effect in 2015, Lockheed Martin

27 used contract extensions with limited funds to sustain the AEHF and Milstar programs that

28 Nguyen worked on.  *Id.*

United States District Court
Northern District of California

1      Under Lockheed Martin's "matrix" management structure, Nguyen's "functional"

2   manager was William Egan. Dkt. No. 45-3 (Egan Decl. ¶ 3). Egan managed employees

3   with similar job functions, and those employees, including Nguyen, were assigned to other

4   managers for their day-to-day work. *Id*. Amanda Burgess managed the AEHF Database

5   team to which Nguyen provided data. Dkt. No. 45-2 (Burgess Decl. ¶ 2). Senior manager

6   Joseph Frakes oversaw components of the ICS contract, and senior manager Randy Fink

7   was responsible for determining staffing under the COOLS contract. Dkt. Nos. 45-5

8   (Frakes Decl. ¶¶ 1, 3), 45-4 (Fink Decl. ¶ 2).

9      In December 2014, Lockheed Martin first notified Nguyen that her employment

10   would be terminated. In light of the anticipated budget constraints during the ICS contract

11   extension period, Frakes considered eliminating three positions, including Nguyen's. Dkt.

12   No. 45-5 at 2 (Frakes Decl. ¶¶ 5–6). On November 19, 2014, Fink consulted with Burgess

13   on whether Burgess's team could meet its requirements without Nguyen. Dkt. No. 57-1 at

14   38. In late November 2014, Frakes instructed Egan to give Nguyen a 60-day layoff notice.

15   Dkt. No. 45-5 at 2 (Frakes Decl. ¶ 6). Egan did so on December 5, 2014. Dkt. No. 45-1 at

16   41 (Wilbur Decl. Ex. A). According to the Worker Adjustment and Retraining

17   Notification (WARN) document signed by Egan, the layoff was "due to funding

18   constraints." *Id*.

19      At the same time Frakes was considering firing Nguyen, Burgess hired a new

20   software engineer, Brian Snodgrass, to her AEHF team. Burgess posted a requisition for

21   the position to Lockheed Martin's employment portal in October 2014, after learning that a

22   software engineer named John Lee would be leaving her team. Dkt. No. 45-2 at 2

23   (Burgess Decl. ¶ 5–6). On December 8, 2014, three days after issuing the 60-day WARN,

24   Egan sent Nguyen an email alerting her to the position in an effort to help her find new

25   employment with Lockheed Martin. Dkt. No. 57-1 at 149 (Nguyen Decl. Ex. 57). Nguyen

26   initially expressed interest but then indicated she did not think she was qualified for the

27   position because she did not have the requisite technical skills. *Id.* at 168 (Nguyen Decl.

28   Ex. 67). After their email exchange, Nguyen and Egan learned that Burgess had already

Case No. 16-cv-03780-NC                3

United States District Court
Northern District of California

1    put in the order to hire Snodgrass the same day Egan found the job posting. *Id.* at 33

2    (Nguyen Decl. Ex. 14). Nguyen never applied for the job, though she later stated she

3    would have applied for it had she known about it sooner. *Id.* at 170 (Nguyen Decl. Ex.

4    69).

5              Once she learned Snodgrass had been hired, Nguyen sent an email to her managers

6    alleging her termination was discriminatory. *Id.* at 34–36 (Nguyen Decl. Ex. 14). Egan

7    discussed the matter with an employee in Lockheed Martin's human resource division,

8    Nilda Ramirez. *Id.* at 37. Ramirez looked into the matter and determined that Burgess had

9    known Nguyen was going to be terminated almost a month before issuing the order to hire

10   Snodgrass. *Id.* at 38. Based on his conversation with Ramirez, Egan emailed Frakes and

11   Fink stating that, because Burgess "was aware of the cut prior to the interview/order for

12   hire, there is some concern." *Id.* at 38. He went on to say, "[Nguyen] herself admitted that

13   she was not an ideal candidate for the position, but [Ramirez] finds that the fact that

14   [Nguyen] does have some overlap and was not considered for this position is problematic."

15   *Id.*

16             In late December 2014 and early January 2015, Egan and Frakes continued trying to

17   find work for Nguyen to do, including half-time work and work supporting the Milstar

18   project. *Id.* at 39–40. Eventually, Frakes and Fink determined not to continue Nguyen's

19   employment once the COOLS contract took effect in June 2015. Dkt. No. 45-4 at 2 (Fink

20   Decl. ¶ 3). Lockheed Martin issued another WARN notice on February 25, 2015, and

21   Nguyen's final day working for Lockheed Martin was June 30, 2015. Dkt. No. 45-1 at 41

22   (Wilbur Decl. Ex. A).

23       **b. Procedural History**

24             Nguyen filed a complaint with the Department of Fair Employment and Housing

25   (DFEH) on March 16, 2016, and on the same day requested and received a right-to-sue

26   notice. *Id.* at 45 (Wilbur Decl. Ex. C). Nguyen then filed this action against Lockheed

27   Martin stating a claim for disability discrimination and a claim for age discrimination, both

28   under FEHA, Cal. Gov. Code § 12940(a). Dkt. No. 1. Because Nguyen filed her

Case No. 16-cv-03780-NC             4

1  administrative complaint less than a year after she was terminated on May 30, 2015, she

2  satisfactorily exhausted her administrative remedies for both claims in this case. *See* Cal.

3  Gov. Code § 12960(d).[1]

4      The Court has subject matter jurisdiction over Nguyen's claims pursuant to 28

5  U.S.C. § 1332, and all parties have consented to the jurisdiction of a magistrate judge.

6  Dkt. Nos. 12, 13.

7      Lockheed Martin now moves for summary judgment. Dkt. No. 45. Nguyen

8  opposes the motion. Dkt. No. 56. The Court heard the motion on August 23, 2017, and

9  considered the parties' supplemental briefing regarding recent Ninth Circuit precedent.

10 Dkt. Nos. 59, 61.

## II.  LEGAL STANDARD

12     Summary judgment may be granted only when, drawing all inferences and

13 resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any

14 material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014);

15 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under

16 governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty

17 Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the

18 evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

19 Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of

20 L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

21     The moving party bears the burden of identifying those portions of the pleadings,

22 discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

23 *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving

24 party must go beyond the pleadings, and, by its own affidavits or discovery, set forth

25

26 [1] Although certain of the events surrounding Nguyen's termination took place more than a year before Nguyen filed her DFEH complaint, the action arises purely from Nguyen's

27 termination. The Court considers the earlier events only to the extent they bear on Nguyen's termination. *See Burrell v. Cty. of Santa Clara*, No. 11-cv-4569-LHK, 2013 WL

28 2156374, at *33 (N.D. Cal. May 17, 2013) (considering time-barred claims for evidentiary purposes).

*(left margin, vertical text)* United States District Court  Northern District of California

1  specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c);

2  *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v.*

3  *Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however,

4  must be drawn in the light most favorable to the nonmoving party. *Tolan*, 134 S. Ct. at

5  1863 (citing *Liberty Lobby*, 477 U.S. at 255).

6  **III.  DISCUSSION**

7  Nguyen's FEHA disability and age discrimination claims are evaluated using the

8  three-step, burden-shifting test the U.S. Supreme Court espoused in *McDonnell Douglas*

9  *Corp. v. Green*, 411 U.S. 792 (1973). *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354

10  (2000) (recognizing that California has adopted the *McDonnell Douglas* test for FEHA

11  discrimination claims). Because the two claims operate under the same legal framework

12  and implicate substantially similar evidence and arguments, the Court addresses them in a

13  single analysis.

14  At the first step of the *McDonnell Douglas* test, the plaintiff has the burden of

15  establishing a prima facie case of discrimination. This burden requires the plaintiff to

16  identify an action taken by the employer that, if unexplained, gives rise to an inference of

17  discrimination. *Guz*, 24 Cal. 4th at 355.

18  If the plaintiff meets her burden at the first step, the burden shifts to the employer at

19  the second step to rebut the inference. The burden is one of production, requiring the

20  employer to offer evidence that, if taken as true, would permit the conclusion that there

21  were legitimate, nondiscriminatory reasons for the adverse employment action. If the

22  employer's evidence meets this burden, the presumption of discrimination disappears. *Id.*

23  at 356.

24  In the third step, the plaintiff has an opportunity to attack the employer's proffered

25  legitimate reasons as mere pretext for discrimination, or to offer other evidence of

26  discriminatory motive. Ultimately, the question is "simply whether the employer acted

27  with a motive to discriminate illegally." *Id.* at 358.

28  The Court does not address the first step in this summary judgment motion,

Case No. 16-cv-03780-NC                 6

1    following the California Supreme Court's reasoning in *Guz*. There, the court noted that

2    FEHA caselaw is unclear whether the *McDonnell Douglas* burdens are reversed when, as

3    here, a defendant employer assumes responsibility for showing it is entitled to judgment by

4    moving for summary judgment. *Id.* at 356–57. The court sidestepped the issue by finding

5    that, even if a prima facie case were shown, the defendant employer in *Guz* met its second-

6    step burden of providing legitimate, nondiscriminatory reasons for the plaintiff's

7    termination. *Id.* at 357. So the court proceeded directly to step three, evaluating whether

8    the plaintiff could raise a triable issue of pretext or otherwise demonstrate discriminatory

9    motive. *Id.* The Court takes the same approach here, because Lockheed Martin satisfies

10   its step-two burden.

11         **a.  Lockheed Martin Satisfies Its Step-Two Burden.**

12         Lockheed Martin offers legitimate, nondiscriminatory reasons for terminating

13   Nguyen that are sufficient to rebut a step-one, prima facie showing of discrimination. Its

14   evidence shows that Nguyen was terminated because senior managers Frakes and Fink,

15   with input from Burgess, determined there would not be a need for a full time employee

16   doing the work Nguyen had been doing once the COOLS contract took effect. Instead, it

17   planned to allocate Nguyen's work to other employees part-time on a "pay by the drink"

18   basis. Dkt. No. 57-1 at 18 (Nguyen Decl. Ex. 9), 36 (Ex. 14), 118 (Ex. 46).

19         Lockheed Martin's evidence supports its explanation. Frakes, Fink, and Burgess all

20   testify that Nguyen was laid off because her position was not needed. Dkt. Nos. 45-4 at 2

21   (Fink Decl. ¶ 3), 45-5 at 3 (Frakes Decl. ¶ 8), 45-2 at 2 (Burgess Decl. ¶ 4). And according

22   to Burgess, Lockheed Martin employees spent just 145 hours doing Nguyen's prior work

23   in the first full calendar year following Nguyen's departure. Dkt. No. 45-2 at 2 (Burgess

24   Decl. ¶ 4). Lockheed Martin's reasons and supporting evidence rebut a prima facie case of

25   discrimination. *See Guz*, 24 Cal. 4th at 358 (finding an employer meets its step-two

26   burden when it gives "reasons that are facially unrelated to prohibited bias, and which, if

27   true, would thus preclude a finding of discrimination").

28

Case No. 16-cv-03780-NC          7

1    **b. Nguyen Does Not Meet the Step-Three Burden of Showing Pretext.**

2    In light of Lockheed Martin's proffered nondiscriminatory reasons for Nguyen's

3    termination, the dispositive question in this case is whether Nguyen can show Lockheed

4    Martin's reasons are pretext for an illegal, discriminatory motive based on Nguyen's

5    disability or age. To survive summary judgment, Nguyen must offer evidence that is

6    "sufficiently probative" to allow a reasonable jury to conclude either that Lockheed

7    Martin's reasons for the termination are false, or that the true reason for the termination

8    was discriminatory. *See Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1147 (9th Cir.

9    2017) (quoting *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996)).

10   The Court addresses five sets of evidence that Nguyen claims show pretext: (1) the

11   hiring of Snodgrass shortly before Nguyen was fired; (2) statements by Lockheed Martin

12   employees about "fresh" or "junior" persons; (3) examples of other old and disabled

13   employees being terminated; (4) allegedly altered performance reviews from 2012, 2013,

14   and 2014; and (5) other miscellaneous arguments and evidence, mostly regarding whether

15   Lockheed Martin was budget-constrained when it terminated Nguyen. The Court finds

16   that none of this evidence permits a reasonable inference of pretext or discrimination.

17   **i. Snodgrass's Hiring Does Not Raise a Triable Issue of Pretext.**

18   Nguyen's best evidence of pretext is Lockheed Martin's decision to hire Snodgrass,

19   a younger and non-disabled employee, three days after giving Nguyen notice of her

20   termination. If Nguyen is correct that Snodgrass was hired to replace her, this would

21   contradict Lockheed Martin's proffered explanation that it fired Nguyen because her

22   position was no longer needed. In response, Lockheed Martin argues Snodgrass was hired

23   to replace Lee, not Nguyen, and claims it did not hire Nguyen for the position because she

24   never applied for it. Viewing disputed facts in Nguyen's favor, the Court finds

25   Snodgrass's hiring does not give rise to a reasonable inference of pretext or discriminatory

26   motive.

27   Nguyen's strongest evidence for her argument is Burgess's role in the personnel

28   decisions. Because Frakes and Fink approached Burgess about Nguyen's position on

Case No. 16-cv-03780-NC            8

1   November 19, 2014, Burgess knew Nguyen would be fired almost a month before giving

2   the order to hire Snodgrass. Dkt. No. 57-1 at 38 (Nguyen Decl. Ex. 14). So, even though

3   Nguyen did not apply for the software engineer position, it is possible to infer that Burgess

4   calculated a degree of tradeoff between Nguyen and Snodgrass and picked Snodgrass.

5          Unfortunately for Nguyen, the evidence is not sufficiently probative to support such

6   an inference. Instead, the evidence shows the new job was to backfill Lee's departure and

7   that it differed materially from Nguyen's. It is undisputed that Burgess initially posted the

8   requisition to replace Lee, and she did so before knowing that Frakes and Fink were

9   considering terminating Nguyen. Dkt. No. 45-2 at 2 (Burgess Decl. ¶ 5). Regarding

10  Burgess's calculus between Snodgrass and Nguyen, Burgess testifies that she "did not

11  consider Ms. Nguyen for the position because she did not apply for it," and that she "had

12  no reason to believe at the time that [Nguyen] was qualified for a software engineer job."

13  *Id.* (Burgess Decl. ¶ 8).

14         The evidence also shows Snodgrass's "Software Engineer" job required at least

15  some skills beyond what Nguyen's "Systems Engineer" position required. Indeed, Nguyen

16  herself did not initially believe she had the requisite technical skills to perform the job.

17  Dkt. No. 57-1 at 168 (Nguyen Decl. Ex. 67) ("Amanda [Burgess] probably wants a person

18  with Java coding experience & strong SQL, which I don't have."). Moreover, Burgess

19  testified that once Snodgrass began working in the position, he did not perform the duties

20  Nguyen had previously performed. Dkt. No. 45-2 at 2 (Burgess Decl. ¶ 8). While there is

21  evidence supporting Nguyen's contention that the new job involved some of the

22  knowledge and skills that Nguyen had, *see* Dkt. No. 57-1 at 149, 170–72 (Nguyen Decl.

23  Exs. 57, 70), it does not show that the job was anything other than a backfill for Lee. *Id.* at

24  115 (Nguyen Decl. Ex. 45) (original job posting, characterized as "a backfill for a level 3

25  that left the program").

26         In sum, the evidence does not support an inference that Lockheed Martin replaced

27  Nguyen with Snodgrass. At most, there was overlap between the positions, and overlap is

28  not inconsistent with Lockheed Martin's nondiscriminatory explanation that it did not need

1    a full-time employee doing Nguyen's prior work.  Absent other indicators of

2    discriminatory motive surrounding Snodgrass's hiring, this evidence does not give rise to a

3    reasonable inference of pretext.

### ii. Statements About "Fresh" and "Junior" Employees Do Not Raise a Triable Issue of Pretext.

4

5          Nguyen further alleges that statements made in deposition about "fresh" and

6    "junior" employees reveal Lockheed Martin's discriminatory motives.  However, these

7    statements refer to less experienced employees, not younger ones, and are in any case

8    ambiguous in their application to Nguyen.  Consequently, they do not reasonably permit

9    the conclusion either that Lockheed Martin's proffered reasons for Nguyen's discharge are

10   false, or that the true reason for her termination was discriminatory.

11         The statements Nguyen puts forth come from Burgess and Egan's depositions.

12   Burgess indicated she initially wanted to hire for Snodgrass's position at a Level 2, rather

13   than Level 3, "to ensure we had a fresh person who didn't have all the experience and to

14   see what they would bring."  Dkt. No. 57-1 at 125 (Nguyen Decl. Ex. 49).  Burgess also

15   sent an email stating "we wanted to bring in a more junior person and grow them into the

16   position."  *Id.* at 120 (Nguyen Decl. Ex. 48).

17         Similarly, Egan affirmed in deposition his sense that "there was a push to hire new

18   talent, people who will be around for a while."  *Id.* at 131 (Nguyen Decl. Ex. 51).  Egan

19   explained that Lockheed Martin has a "mature program" and needed to make sure retiring

20   employees were replaced with people who "aren't going to leave in the next year or two

21   because we have to sustain the program."  *Id.* at 131–32.  Egan also affirmed that

22   Lockheed Martin wanted to avoid the higher salaries that experienced employees can

23   bring.  *Id.* at 133.

24         It is difficult to understand Burgess's statements as referring to anything other than

25   less experienced, junior level employees.  Burgess reasonably explains that there is value

26   in having current employees train someone new, because "when you train it, you have to

27   explain it, and it helps you understand it even deeper."  *Id.* at 125 (Nguyen Decl. Ex. 49).

28

Case No. 16-cv-03780-NC          10

1    This explanation meshes with Lockheed Martin's plan to allocate Nguyen's work to other

2    employees part-time "on a pay by the drink basis." *Id.* at 18 (Nguyen Decl. Ex. 9), 138

3    (Nguyen Decl. Ex. 53a).

4          Egan's comments are more concerning, but do not save Nguyen from summary

5    judgment because they are ambiguous and do not directly relate to her termination.  In

6    *Nesbit v. Pepsico, Inc.*, the Ninth Circuit held that the comment "[w]e don't necessarily

7    like grey hair" did not support an inference of discriminatory motive because it "was

8    uttered in an ambivalent manner and was not tied directly to [the plaintiff's] termination."

9    994 F.2d 703, 705 (9th Cir. 1993).  The Ninth Circuit cited *Nesbit* when it affirmed

10   summary judgment for an employer despite a supervisor's statement that he "intended to

11   get rid of all the 'old timers' because they would not 'kiss my ass.'" *Nidds*, 113 F.3d at

12   915.  The court found the comment did not create an inference of age discrimination

13   because it was "ambiguous" and "was not tied directly to [the plaintiff's] layoff." *Id.* at

14   919; *accord Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1284 (9th Cir. 2000) (affirming

15   summary judgment for an employer where the word "promotable" did not give rise to an

16   inference of age discrimination); *McClain v. Cty. of Clark*, 585 F. App'x 410 (9th Cir.

17   2014) (finding isolated references to the plaintiff as an "old dog" and a "crazy Canadian"

18   did not provide direct evidence of discriminatory motive).

19         Here, Egan's comments refer to an unspecific "push" to hire employees likely to

20   stay with the company for a long time, and do not relate directly to Nguyen's termination.

21   Especially coming from Egan, who did not make the decision to fire Nguyen, these

22   comments do not reasonably permit a conclusion that Lockheed Martin's motives were

23   discriminatory.

24                   **iii.  Termination of Other Disabled and Old Employees Does Not Raise a
                          Triable Issue of Pretext.**

25         Nguyen points to what she deems "extreme statistics" that "clearly pointed to age

26   and disability discrimination within Milstar and AEHF." Dkt. No. 56 at 11.  According to

27   Nguyen, out of "less than 60" employees, all four of the "older and disabled employees"

28

     Case No. 16-cv-03780-NC              11

1    were terminated between June 2012 and June 2015. *Id.*

2    For statistical evidence to raise a triable issue of pretext, they "must show a stark

3    pattern of discrimination unexplainable on grounds other than [the protected

4    characteristic]." *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003).

5    Nguyen's statistics fall far short of this standard, because the numbers lack context and

6    give no insight into the significance of four out of "less than 60" employees being fired

7    over three years.

8            **iv.   Nguyen's Performance Reviews Do Not Raise a Triable Issue of Pretext.**

9            Nguyen submits her performance reviews from 2012, 2013, and 2014 as evidence

10   of pretext. According to her, Lockheed Martin employees improperly altered the

11   performance reviews to justify the termination decision and disguise Lockheed Martin's

12   true discriminatory motives. Dkt. No. 56 at 22–24.

13           Specifically, Nguyen asserts that a page from the 2012 performance review contains

14   a Lockheed Martin human resource employee's surname that the employee did not adopt

15   until 2015, indicating the performance review was altered in 2015. *Id.* at 22–23. The 2013

16   performance review allegedly had certain of Nguyen's job tasks removed in an effort to

17   make Nguyen's position seem less important, revealed by a mismatched page from 2014.

18   *Id.* at 23. And the 2014 performance review purportedly shows discrepancies between the

19   mid-year review and the final review, with key statements removed regarding Nguyen's

20   preparation for anticipated future work with Burgess on the AEHF project. *Id.* at 23–24.

21   Although Nguyen acknowledges that changes can be made between mid-year and final

22   versions, she claims these particular changes amount to "the removal and altering of

23   evidence to harm Nguyen's case." *Id.* at 24.

24           There are two problems with Nguyen's argument. First, Lockheed Martin offers

25   entirely reasonable explanations for each of the alleged alterations, and Lockheed Martin's

26   internal investigation into the matter found no evidence of alterations. Dkt. No. 57-1 at 54

27   (Nguyen Decl. Ex. 17). Second, and more importantly, the performance reviews do not

28   create a triable issue of pretext even assuming they were altered. Lockheed Martin makes

United States District Court
Northern District of California

1    no argument that the quality of Nguyen's performance led to her termination, and the

2    parties do not dispute what Nguyen's responsibilities were before she was terminated.

3    Post hoc modifications to Nguyen's performance reviews do not contradict Lockheed

4    Martin's explanation that Nguyen's position would not be necessary once the COOLS

5    contract began.

6         Moreover, even if the performance reviews did reveal something fishy, they imply

7    nothing about Nguyen's age, disability, or other discriminatory motives. Thus, even

8    construing Nguyen's evidence in her favor, it would not be reasonable to infer that

9    Lockheed Martin changed the 2012, 2013, and 2014 performance reviews as a cover-up

10   for disability or age discrimination.

11              **v.  Nguyen's Other Evidence Does Not Raise a Triable Issue of Pretext.**

12        Nguyen presents various other evidence in her voluminous exhibits. Much of it is

13   irrelevant (i.e. news articles about the start date of the COOLS contract, Lockheed

14   Martin's responses to inapplicable interrogatories), but some warrants a brief explanation

15   as to why it does not change the outcome of the case. Specifically, Nguyen submits

16   evidence in an effort to demonstrate that Lockheed Martin was not actually financially

17   constrained when it terminated her, meaning its statements about "funding constraints"

18   must be pretext. *See*, *e.g.*, *id.* at 2, (Nguyen Decl. Ex. 2), 16–18 (Ex. 9), 25 (Ex. 12).

19        This argument misses the mark because limited funding was not the proffered

20   reason for Nguyen's ultimate termination. Lockheed Martin does not dispute that budget

21   issues initially animated Nguyen's termination; by its own words, the December 5, 2014,

22   WARN notice was issued "due to program funding constraints." Dkt. No. 45-1 at 40

23   (Wilbur Decl. Ex. A). Frakes made that determination when the ICS contract was set to

24   expire and before the COOLS contract was set to kick in—a time when there were in fact

25   budget constraints. Dkt. No. 45-5 at 2 (Frakes Decl. ¶ 5). But Lockheed Martin decided to

26   terminate Nguyen at the start of the COOLS contract based on Fink's determination that a

27   full time position was not necessary to do Nguyen's work. This is the operative

28   nondiscriminatory reason that Nguyen must rebut. Thus, Nguyen's evidence attacking

     Case No. 16-cv-03780-NC          13

1   budget constraints as pretext cannot create a triable issue of discrimination.

2   **IV.   CONCLUSION**

3          The Court acknowledges Nguyen's frustration and sense of injustice in this case.

4   Losing one's livelihood is challenging no matter the circumstances, and it was reasonable

5   for Nguyen to question why she was fired at the same time new hires were launched.  But

6   in light of the evidence presented, FEHA does not offer the remedy Nguyen seeks.  The

7   law does not bar employers from making decisions that are unwise, incorrect, foolish,

8   trivial, or baseless.  *See Guz*, 24 Cal. 4th at 358 (quoting *McCoy v. WGN Continental*

9   *Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992)).  It just prohibits them from

10  discriminating.

11         Here, the evidence on record does not permit a reasonable factfinder to conclude

12  that Lockheed Martin's proffered reasons for Nguyen's discharge were pretext, or that its

13  true motives were discriminatory.  Accordingly, Lockheed Martin's motion for summary

14  judgment is GRANTED.

15

16         **IT IS SO ORDERED.**

17

18  Dated:  October 2, 2017                    _____

19                                             NATHANAEL M. COUSINS
                                               United States Magistrate Judge

20

21

22

23

24

25

26

27

28